THE PEOPLE, Appellants, *v.* JOHN B. BLACKFORD *et al.*, Appellees.

### APPEAL FROM SANGAMON.

Sureties for a collector will not be released from their obligations to the State, because the general assembly has passed an act which allows their principal certain credits on a judgment obtained against him and them in favor of the State, which also enables the principal to collect certain unpaid taxes for his own benefit, and designates the time within which the taxes are to be collected and a settlement made with the county court, without postponing the day for the payment due to the State.

THIS cause was heard and decided by DAVIS, Judge, at the November term, 1853, of the Sangamon Circuit Court.

D. B. CAMPBELL, for Appellants.

A. LINCOLN, for Appellees.

TREAT, C. J. Blackford was collector of White county for the years 1846 and 1847, and gave bond with Williams and Mitchell as sureties. In November, 1850, the State recovered judgment against the obligors for $2,302.70, the arrearages of revenue due the State for the years 1846 and 1847. An execution was issued on the judgment and levied on the lands of the sureties. In February, 1851, and while the levy continued in force, the general assembly passed an act in these words :

" Sec. 1. That John B. Blackford, late collector for the years 1846 and 1847, be and is hereby authorized and empowered to proceed in the collection of delinquent taxes for the years 1846 and 1847, in the same manner as he might have done under the assessment and laws regulating the collection of revenue for those years.

Sec. 2. The county court of White county, at its June term, 1851, is hereby authorized to receive from the said John B. Blackford a delinquent list of the tax on personal property for the year 1846.

Sec. 3. The ten per cent. interest on the uncollected taxes for the years 1846 and 1847 be remitted to the said John B. Blackford; and the time of settlement and collections by him, as such collector, be extended to the first day of April, 1852."

After the passage of this act, a *venditioni exponas* was sued out, commanding the sheriff to proceed and sell the property levied on. Blackford and his sureties then filed a bill in chancery, and obtained an injunction against any further proceedings under the judgment. The bill alleged that Blackford was entitled to a credit on the judgment of $753.16, and that the act of the legislature discharged the sureties from liability. The answer admitted that Blackford was entitled to the credit claimed, but denied that the sureties were discharged. On this state of case, the court, after crediting the judgment with $753.16, dissolved the injunction as to Blackford, and made it perpetual in favor of the sureties. The credit included taxes on lands sold and bid in by the State, the amount of delinquent taxes allowed by the county court, and ten per cent. interest remitted by the legislature.

This case depends entirely upon the construction to be put on the special act of the legislature. The first section confers authority on Blackford to complete the collection of the taxes assessed for the years 1846 and 1847. In respect to the unpaid taxes, it invests him with the same power that he formerly possessed. It gives him power to enforce payment by distraining personal property, and by obtaining judgment against real estate. The sole object of this section is to enable him to recover such taxes as he failed to collect while in office. Without this provision he would lose the amount of the uncollected taxes.

The second section authorized the county court to receive from Blackford a list of the delinquent taxes on personal property for the year 1846, and allow him credit for so much thereof as could not have been collected in consequence of the insolvency or non-residence of the persons against whom the taxes were charged. The general law required this list to be returned to the county court in June, 1847. Blackford neglected to make the return at that time, and therefore was not entitled to any deduction on account of these taxes. The only object of this provision is to give him the benefit of such credit as he might have received by a strict compliance with the statute.

The first clause of the third section releases Blackford from the payment of interest on the amount of revenue due the State. The law made him liable for interest at the rate of ten per cent. from the time the taxes should have been paid into the State treasury, and interest was included in the judgment accordingly. It required legislative interposition to relieve him from the payment of this portion of the judgment, and hence the insertion of this provision.

Thus far the act is free from all doubt and uncertainty. It enables Blackford to collect the unpaid taxes and obtain credit on the delinquent list, and it releases him from the payment of interest. These provisions do not prejudice the sureties, for they diminish the amount of their liability and increase the ability of their principal.

But it is insisted that the last clause of the third section extends the time for the payment of the judgment, and thereby exonerates the sureties from all liability. It would require a forced construction of the act to sustain this position. The clause in question does not in terms postpone the time of payment, nor is it a fair conclusion from the whole act that such was the intention of the legislature. Full effect may be given to every portion of the act without resorting to the construction contended for. The design of the legislature was to allow Blackford certain credits on the judgment, and enable him to collect the unpaid taxes for his own benefit. To accomplish this purpose the interest is remitted, and power is given him to recover the uncollected taxes and make return of the delinquent list to the county court. This is the entire scope and extent of the act. The object of the concluding clause is to designate the time within which the taxes are to be collected and a settlement made with the county court, and not to postpone the day for the payment of the revenue due the State. The term " collections " manifestly refers to the unpaid taxes. The first section, in general terms, confers authority on Blackford to collect these taxes, while this clause requires him to exercise the power by the 1st of April, 1852. The term " settlement " must refer to the collection of the unpaid taxes and the adjustment of the delinquent list. Blackford is required to settle with tax-payers and the county court within the same period of time. The case does not show that he had settled with the county for its portion of the revenue, and perhaps the act could be so construed as to extend the time for such a settlement. The term " settlement " does not relate to the State revenue, for it was all included in the judgment. There was no account between Blackford and the State to be adjusted. The State had recovered judgment for the full

amount of this revenue, and was endeavoring to coerce payment. The act has no other effect upon the judgment than to reduce the amount to be collected. It neither opens the judgment nor suspends proceedings under it. It leaves the judgment in full force, and the auditor is still permitted to enforce satisfaction. It does not impair or suspend any right or remedy of the sureties. It leaves them at perfect liberty to pay off the judgment and resort to their principal for reimbursement.

That portion of the decree which enjoins the collection of the judgment from Williams and Michell is reversed, and in all other respects the decree is affirmed.